## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 13-10305-FDS** |
| | ) | |
| **KEITH GAGE,** | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S SENTENCING MEMORANDA

Now comes the United States, by its attorneys, Carmen M. Ortiz, United States Attorney, and Suzanne Sullivan Jacobus, Assistant U.S. Attorney, and hereby submits this Sentencing Memorandum.   On July 11, 2014, defendant Keith Gage ("Gage" or "defendant") entered a guilty plea to a two count indictment charging him with one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. §2422(b), with a date of offense of between on or about May, 2013, and on or about August 23, 2013, within the District of Massachusetts, and elsewhere, and one count of Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. §2422(b), with a date of offense of between on or about August 24, 2013, and on or about September, 2013, within the District of Massachusetts, and elsewhere.[1]   Additionally, pursuant to 18 U.S.C. §2428, there is also a criminal forfeiture allegation.

### I.   SENTENCING GUIDELINES/GUIDELINE CALCULATIONS

The United States Sentencing Guidelines are advisory, but they remain "the starting point and the initial benchmark" in sentencing.   *Gall v. United States,* 552 U.S. 38, 49-50 (2007).   The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C.

---

1 Plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C) plea agreement (docket entry # 62).

§3553(a).  *Id*. at 49-50. Because each case is unique, the Court must make a particularized

analysis of the nature and circumstances of the offense and the defendant's history and

characteristics. 18 U.S.C. §3553(a)(1).   The Court must then impose a sentence that sufficiently

reflects the seriousness of the crime, promotes respect for the law, and provides just punishment.

18 U.S.C. §3553(a)(2)(A).   The sentence should adequately deter criminal conduct, protect the

public, and provide any necessary education, training or treatment. 18 U.S.C. §3553(a)(2)(A)-(D).

After determining the appropriate sentence, the Court should adequately explain its rationale to

"allow for meaningful appellate review and to promote the perception of fair sentencing."  *Gall,*

552 U.S. at 50.   The Court must also strive to "avoid unwarranted sentencing disparities among

defendant's with similar records who have been found guilty of similar conduct."   18 U.S.C.

§3553(a)(6).

The defendant faces a minimum mandatory sentence of 120 months and a maximum

sentence of life imprisonment on each of the two counts (see Presentence Report ("PSR") at ¶

100).[2] The sentencing guidelines and statutory term of supervised release require a term of 5 years

to life on each count (see PSR ¶¶ 107-109 and 18 U.S.C. §3583(k)).   The parties have submitted a

plea agreement to the Court.   In it, the parties have agreed that under USSG §2G1.3(a)(3), the

defendant's base offense level ("BOL") is 28; with a 2 level increase under USSG

§2G1.3(b)(2)(B), as the defendant unduly influenced a minor to engage in prohibited sexual

contact; an additional 2 level increase under USSG §2G1.3(b)(3)(A) as the offenses involved the

_____

2 On October 6, 2014, the government did submit a letter containing comments/objections to the
PSR.   The majority related to information the government requested and Probation has since
re-included in the offense conduct section of the PSR.   In its letter to Probation, the government
also re-asserted that the plea agreement was submitted pursuant to Fed. R. Crim. P. 11(c )(1)(C),
and in it, the base offense level, including enhancements, applicable to convictions on two counts
of a violation of 18 U.S.C.§ 2422(b), that the parties agreed to.

use of a computer to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; and an additional 2 level increase under USSG §2G1.3(b)(4) as the offenses involved the commission of a sex act (also see PSR¶ 37).   As reflected in the plea agreement, the resulting offense level would be 34 with a 3 level reduction for prompt acceptance of responsibility resulting in a total offense level ("TOL") of 31.   The PSR lists the defendant's criminal history category ("CHC") as I (see PSR ¶¶55-56) which the government agrees with. With a TOL of 31 and a CHC of I, the defendant's guideline sentencing range ("GSR") would be 108 months to 135 months with a 120 month minimum mandatory sentence (see PSR ¶ 100). Further, in the plea agreement, the government states that it agrees not to charge defendant with child pornography offenses, including production of child pornography, in violation of 18 U.S.C. §2251(a), related to child pornographic evidence recovered from defendant's computers and other electronic devices seized from defendant's residence on or about September 16, 2013, based on conduct underlying the crimes charges in this case.   A conviction for production of child pornography, in violation of 18 U.S.C. §2251(a), provides for a mandatory minimum sentence of 180 months (i.e., 15 years).   The government took this evidence into consideration in negotiating the plea agreement for a sentence of not less than 13 years and not greater than 15 years.

The PSR reflects the guideline calculations outlined above (see PSR ¶ 37).   However, in the PSR, Probation then utilized a cross-reference pursuant to USSG § 2G1.3(c)(1), due to the fact that the offense involved the defendant causing the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.   Applying that cross-reference, the resulting offense level as calculated by US Probation results in a total offense level of 35 (after applying a 3 level reduction for prompt acceptance of responsibility), which is greater than what

3

the parties have agreed to in their plea agreement (see PSR ¶¶ 38-50).   According to the PSR, a TOL of 35 and a CHC of I results in a GSR of 168 months to 210 months with a 120 month minimum mandatory sentence (see PSR ¶ 101).

Nonetheless, the government stands by the plea agreement and respectfully requests the Court accept the plea agreement and impose a sentence of 180 months incarceration followed by at term of five years of supervised release with specific conditions while on supervised release, forfeiture as determined by the Court and as outlined in paragraph 10 of the plea agreement, including all computers and electronic equipment utilized by the defendant to commit the instant offense for which he now stands convicted,[3] restitution as determined by the Court, a fine to be determined by the Court, and a $200 mandatory special assessment.   Restitution is mandatory pursuant to 18 U.S.C. §3663A.[4]   As part of the plea agreement, the parties request the following special condition be imposed for the duration of the defendant's incarceration and his period of supervised release:   no contact directly or indirectly with "Minor A".   Additionally, as a consequence of his conviction for these crimes, pursuant to the Sex Offender Registration and Notification Act and the laws of the Commonwealth of Massachusetts, the defendant is required to register as a sex offender and to keep that registration current, in the place where he resides, where he is employed, and where he is a student.   This requirement is also contained in the plea agreement.

---

3The plea agreement outlines numerous items to be forfeited in this case.   However, after conferring with defense counsel, the government agrees to return some of the items to the defendant's family after now confirming with UPSIS that they contain no evidence of child pornography.   A list of said items will be provided to the Asset Forfeiture section of the U.S. Attorney's Office and to defense counsel prior to the sentencing date.

4 At present, the government has received no restitution documentation from Minor A's family.

The government's recommendation is fair and reasonable.   It reflects both the seriousness of defendant's conduct and the seriousness with which Congress and the Sentencing Commission view sexual exploitation of minors.   It is clear that Keith Gage repeatedly took advantage of the vulnerabilities of a young teenage.   He is precisely the sort of person Congress had in mind when it enacted §2422(b), and when it increased that section's mandatory minimum penalty. Although greater than the mandatory minimum sentence for a conviction of this offense, a sentence within the range proposed by the plea agreement is absolutely necessary to account for the factors that the Court must consider under 18 U.S.C. §3553(a).   This sentence recommended by the government is an appropriate sentence for multiple convictions of this crime and would adequately meet the sentencing objectives outlined in 18 U.S.C. §3553(a).   As such, the government urges this Court to adopt this recommendation.

## II.        DISCUSSION OF 18 U.S.C § 3553(a) FACTORS

The factors to be considered under 18 U.S.C. § 3553(a) include, but are not limited to, the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, the need to deter the defendant and others, the need to protect the public from the defendant's crimes, and the need to avoid unwarranted sentencing disparities.

### A.  Nature and Circumstances of the Offense

The government urges the Court to consider the first §3553(a)(1) factor:   the nature and circumstances of the crimes, and assess his crimes first for what they are.   Keith Gage is an educated man who clearly knows right from wrong.   Regardless of his intelligence, his education and his military service, however, this 43 year old, who was 42 at the times of the offenses, repeatedly sought out an eighth grader for purposes of sexual coercion and enticement and went

even further by actually meeting in person with this minor girl on more than one occasion, when he arranged to and then picked her up, drove her back to his residence or to a wooded area and engaged in sexual intercourse with this minor.   Additionally, on at least three occasions, Gage videotaped this young female engaging in various sexual acts while instructing her on what to do sexually.[5]   He also physically slapped the minor victim which is captured on video.   All the while, Keith Gage knew that this girl was only fourteen.   Gage went so far as to ask her how old she was which is captured on one of the videos he made of her.   Thereafter, he continued to communicate on-line with an undercover USPIS inspector, believing that person was Minor A, in a further attempt to coerce and entice Minor A into sexual activity.   It is clear that Keith Gage is a contact sexual offender.   His illicit internet activity with Minor A was neither occasional nor aberrant.

The facts of this case are extremely disturbing and merit a lengthy prison term, namely, a sentence of fifteen years.   The defendant's stated intentions, to coerce and entice and ultimately engage in sexual intercourse with a minor female who he knew was only fourteen years old, on more than one occasion, are appalling.   The fact that he, among other things, videotaped some of the sex acts he demanded the minor victim perform on herself and on him as well as him masturbating on the videotape, physically assaulted Minor A, gave her alcohol to consume, communicated on-line to her his desire to participate in a gang rape of her, instructed Minor A to delete all messages from him and to change his fictitious name in her cell phone, and then attempted to coerce and entice an undercover USPIS inspector whom Gage believed was Minor A, to meet with him to engage in sexual acts, including requesting that "Minor A" allow Gage to

---

5 Two of the videos depicting Minor A were taken on the same date and the third was taken on a different date.

anally rape her, demands a sentence at the high end of the recommendation proposed in the plea agreement.   The defendant chose to pursue his own sexual gratification with flagrant disregard for the welfare of this minor child.   He preyed upon this young victim and manipulated her young, impressionable mind for his own perverse sexual gratification.

When she was but 14 years old, and knowing that fact, Gage, who, at 42, was 28 years older than Minor A, enticed Minor A by meeting her on-line and engaging in sexually explicit chats with her to coerce her to meet with him.   When she did, Gage engaged in sexual intercourse with the 14 year old and at some point after, knowing it was wrong, he told her to delete all reference of him from her cell phone and Skype accounts.

By way of background, on August 24, 2013, fourteen year old Minor A and her father went to a police department in Massachusetts to report, among other things, that Minor A had been in contact with an adult man on the internet, later identified as Gage, and had been persuaded by him via text messages and via the computer to meet with him and engage in sexual intercourse.[6] Gage's first and last name was provided to authorities by Minor A during the interview.   Minor A related that she met the defendant on-line through a website called Teenspot.com.     On her Teenspot.com profile, Minor A listed her age as fourteen and also posted pictures of herself. After obtaining consent, law enforcement reviewed Minor A's Teenspot.com account and on it, Minor's A's age was listed as 14.

After meeting on-line and communicating with Gage via the internet, Minor A and Gage exchanged cell phone numbers and continued to communicate by texting, emailing and Skyping one another.   Gage also instructed Minor A to save his name in her cell phone under a fictitious

---

[6] That same evening, local police requested and received the assistance of United States Postal Inspection Service ("USPIS") in this investigation.

female name of "Katlyn" in order for Gage to avoid detection.   Through various interstate communications, Gage enticed Minor A to meet with him and he engaged in sexual intercourse with her on more than one occasion.   The sexual acts occurred in the Commonwealth of Massachusetts.

During the interview with Minor A on August 24, 2013, among other things, Minor A reported that Gage traveled to a town in Massachusetts, picked her up near her home and brought her to a Massachusetts residence she believed to be Gage's sister's residence where Gage had sexual intercourse with her and then he drove her back to her town and dropped her off near her residence.   At some point in the investigation, Minor A also informed authorities that after communicating on line with Gage, he arranged to meet with Minor A at a specific outdoor location in Massachusetts where he then engaged in sexual acts with her.   On August 24, 2013, Minor A's father also gave consent to USPIS to search Minor A's cell phone and account, to take over Minor A's on-line and cell phone accounts and to review and take over her Teenspot.com profile.[7]   Additionally, law enforcement conducted a forensic review of Minor A's phone. Further, a review of Minor A's email contacts listed the defendant as a saved contact under the email address of keithgage530@msn.com.    The email address of keithgage530@msn.com is registered to the defendant.    Further, the cell phone number that Gage used to communicate with Minor A via text messages listed Gage as the account holder of that number.    Additionally,

---

[7] When law enforcement attempted to review Gage's Teenspot.com profile (i.e., "Boston_boi15") with whom Minor A had exchanged multiple messages, authorities learned that Gage's profile had been closed and he was no longer a registered member of Teenspot.   The Teenspot.com communication between Gage and Minor A predates the text and Skype communications between the two.

Minor A's name is listed as a contact in Gage's cell phone (which was lawfully seized by authorities upon Gage's arrest).

While Minor A and her father were at the police station the evening of August 24, Minor A received a text on her cell phone which read "Not meeting tonight?" at 22:31 hours.   The text message was from Gage who was listed as a contact in Minor A's cell phone under the name "Katlyn".   When law enforcement asked Minor A who "Katlyn" was, she explained that "Katlyn" was actually Keith Gage whom she had met on the chat site.   She was asked why the contact was labeled under the name "Katlyn" and she replied that Gage told her to list him as a girl's name so it wouldn't look suspicious to her parents.   Police also observed two other texts in Minor A's cell phone from earlier that same evening which were from Gage.   Minor A agreed to assist law enforcement and responded to Gage's text by sending him a text asking "Katlyn" to come meet her.   Gage never replied to that text.

Minor A and Gage began chatting online at Teenspot.com beginning around May, 2013. The defendant created his Teenspot.com account in April, 2013, just prior to contacting Minor A. After meeting the defendant on-line and communicating with him via the internet, Gage and Minor A exchanged cell phone numbers and continued to communicate with one another by texting, emailing and Skyping one another.   On at least one occasion while Skyping on-line with Minor A, Gage was masturbating.

Minor A stated she first met Gage in person the Sunday before Memorial Day (i.e., 2013) when he picked her up in a truck.   Prior to that, Gage had sent her a picture of himself and he also took photos of the minor victim when she was clothed (i.e., while they were communicating on-line).   The defendant engaged in sexual intercourse with Minor A on at least two occasions:

the first was around Memorial Day and the second time was approximately a few weeks later. On the occasions when the defendant met with and engaged in sexual intercourse with Minor A he gave her beer to drink.

According to Minor A, Gage also physically assaulted Minor A by slapping her in the face with an open hand because he was upset due to the fact that he thought she told someone about their relationship.   He told her he was going to tie her up and make it hurt.   He also told her he slapped her because he liked it and because he could.

Beginning that same evening of August 24, 2013, law enforcement, posing in an undercover ("UC") capacity as Minor A, began to communicate with Gage via text messages which continued until shortly before Gage's September 16, 2013, arrest by the state. Using various forms of interstate communications, Gage communicated with the UC, believing UC was Minor A, and in doing so, knowingly attempted to persuade, induce, coerce, or entice the UC, to engage in sexual activity.

Based on a review of minor victim's cell phone account, from as early as May 25, 2013, up to and including August 24, 2013, Gage and Minor A were communicating via text message and in total, in that time frame, there were approximately 1634 text messages between Minor A and Gage.   At some point on August 24, 2013, UC began to use Minor A's cell phone and communicated (as Minor A) with Gage via text messages from that date up to the time shortly before Gage's arrest on September 16, 2013.   Between August 31, 2013, and September 13, 2013, Gage and UC exchanged approximately 191 text messages (which included a request by Gage for anal intercourse).

10

Some of the text messages between Gage and Minor A, and thereafter between Gage and UC posing as Minor A, are sexually graphic, including on June 26, 2013, when Gage sent text messages to Minor A and described with specificity what he will do sexually to Minor A including oral, sex, digital and vaginal penetration, as well as wanting to tie her up and dominate her, and wanting to gang rape her.   In an earlier text message from Gage to Minor A dated June 23, 2013, Gage instructed the minor victim to delete all messages and all messages and history on Skype, as well as to change his name on Skype and in her cell phone.   In still other texts, Gage refers to Minor A being fourteen years old and being a 14 year old sex slave (i.e., texts dated 5/30/13 and 8/2/13).   Gage also tells Minor A that he is going to take pictures of her performing oral sex on him (i.e., text dated 6/9/13).   In a June 9, 2013, chat with Minor A, Gage indicated that he recorded the two of them having sex.   In another text, Gage tells her how he was worried about being caught (i.e., by police) (i.e., text dated 7/1/13).

The following includes a sample of some of the text messages from Gage to Minor A (and two from Minor A to Gage):

| | | |
|---|---|---|
| 5/25/13: | 09:54:298 | Do you like calling me daddy? |
| 5/25/13: | 14:02:11 | …You wanna get dominated and forced don't you |
| 5/25/13: | 17:50:14 | Ok…Just wear a real tight thin shirt<br>The lighter the color the better<br>I want to see your nipples through your shirt it why |
| 5/26/13: | 18:58:57 | Hott<br>Give us a lot of time<br>Lots of time for me to force you, dominate you, then make you cum and cum Then cuddle and kiss |
| 5/26/13: | 19:35:39 | …Ill tale pics tonight |

---

8 Designated in military time

| 5/26/13: | 19:36:15 | (from Minor A) | If you take pics, you cant put them on anything or show anyone, ok? |

5/26/13:      19:37:23      I know im not dumb
                           Ill get in trouble

5/27/13:      10:42:46      Next time ill get you yummy fruity alcohol
                           Wish you could sneak out all night id take you somewhere real nice

5/27/13:      17:16:31      Yea the whole night was fun
                           I like you a lot

5/30/13:      17:05:01      Did u ever think you would be submissive little 14 year old sex slave for an older man?

6/03/13:      17:30:49      Ok… Good I like to finger you
6/03/13:      17:30:53      We going to try anal next time

6/8/13:       09:12:22      Yeah baby I want to get you real drunk take it to a hotel
6/08/13:      09:12:22      I want to eat your p**** for hours

6/08/13:      09:20:39      What to get to the hotel I'm going to make you wear something real sexy I'm gonna ask you dirty questions while I video recorded as we drink

6/08/13:      09:20:39      The drunker you get the dirtier the questions I ask and the Naughtier the positions I make you pose in

6/08/13:      09:20:54      At this point you're real turned on you're starting to rub your p****

6/08/13:      09:21:18      And you see that I'm rubbing my dick
6/08/13:      09:21:52      That's when I grab your head and f*** your mouth
6/08/13:      09:21:53      You get on your knees and you tell me you need to suck dick

6/09/13:      11:29:21      Nice I'm going to take a lot of pictures of you sucking my dick

6/09/13:      17:41:30      Did you like me making a dirty video of you

6/09/13:      17:48:04      The next time I record you were going to have a well planned out

6/09/13:      17:43:00      Did you like being recorded as you were sucking dick

6/23/13:      12: 17:39     Are you ready to get raped in your ass

| | | |
|---|---|---|
| 6/23/13: | 12:18:42 | I'm going to slap you and choke you too |
| 6/23/13: | 12:25:58 | I'm not going to wear one [i.e., condom] when I rape you in your ass |
| 6/23/13: | 13:33:32 | Make sure you delete all my messages today |
| 6/23/13: | 13:43:33 | Go to the bathroom and clean your real good no so my c** doesn't get into your p**** |
| 6/23/13: | 14:00:44 | Ok Make sure you delete all messages<br>Delete all messages and history on skype too<br>And change my name on skype too<br>Did u change my name in your cell phone yet? |
| 6/26/13: | 16:05:26 | I'm going to tie you up and dominate you |
| 6/26/13: | 16:07:03 | I'm going to c** on your face and record in interview of you with c** on your face the whole time |
| 6/26/13: | 16:12:02 | You were older I would set up so that you would have to suck the dick of three or four guys |
| 6/26/13; | 16:16:31 | Have you ever thought about a group of men dominating you |
| 6/26/13: | 16:19:47 | I think that would be sexy if you were forced sucking dicks of the group of guys |
| 6/26/13: | 16:21:14 | I'll think about that maybe I can set that up and record it |
| 6/26/13: | 16:24:55 | I'm thinking six seven or eight we can all take turns f****** you dominating you<br>cumming in your face and fucking your ass |
| 6/26/13: | 16:35:18 | It would be guys I know through work and Friends |
| 6/26/13: | 16:51:14 | I'll figure it out so no one gets in trouble |
| 6/26/13: | 19:39:04 | The thought of you getting gang f***** buy a bunch of guys in all your holes really turns me on and taking loads of c** |
| 6/27/13: | 19:16:03(from Minor A) | My mum's afraid of rapist and kidnappers might Snatch me up when im walking alone in the woods |
| 6/27/13: | 19:17:08 | Hott |

13

|          |           | That's me |
|----------|-----------|-----------|
|          |           | :) |
| 7/01/13: | 08:06:33 | (1/2) Yes |
|          |           | I had a very bad scare… |
|          |           | I thought we were caught, like as in your parents found out and called police on me. So whenever you texted me I though |
| 7/01/13: | 08:06:34 | (2/2)t you were the cops posing as you |
| 7/01/13: | 08:08:20 | I thought I was going to jail |
| 8/02/13: | 19:15:32 | You understand you gonna be my submissive sex slave right? |
| 8/02/13: | 19:26:52 | You ready to be my 14 year old sex slave? |
| 8/02/13: | 19:37:44 | Your my 14 yr old obedient cumwhore sexslave |

The following includes a sample of some of the text messages from Gage to UC:

9/05/13:    Gage asks when they can meet

09/10/13:    Gage says he wants to meet real soon

09/13/13:    Gage texts "I want this weekend I need to fuck you" and goes on to discuss how Minor A should be dressed and also discusses specifics on sex.   Later in that same text message exchange, Gage offers money [to UC] for anal sex and discusses when they can meet.[9]

As a result of the investigation, on September 16, 2013, an arrest warrant for Gage and search warrant for his residence in Middleboro, Massachusetts was executed.   Gage was at home at the time and was arrested without incident.   Numerous items including computers, computer equipment, iPad, cell phones, web cam, hard drives, including a Western Digital external hard drive, blackberry device, computer monitor, printer, miscellaneous sex toys, lubricants and condoms, as well as other items, were seized and secured as evidence.

Thereafter, a forensic examination of the computers, computer equipment, cell phones and other electronic equipment seized from Gage's residence was conducted and revealed text

---

9  That meeting never occurred as Gage did not show up at the prearranged location.

messages between Gage and Minor A, as well as hundreds of Skype messages between the defendant and Minor A from the defendant's computer(s).    Additionally, child pornography was recovered from Gage's computer.[10]   USPIS estimated approximately 35 child pornography images and 7 videos of child pornography were recovered from Gage's computer and associated digital media.   Three of the seven videos containing child pornography depict Minor A which is discussed herein.   The forensic exam recovered several files located on the hard drive of one of the computers seized.   Prior to the recovery of the video files, Minor A informed authorities that Gage videotaped the two of them engaged in sexual acts.   In the plea agreement, the government agreed not to charge the defendant with child pornography offenses, including sexual exploitation of a child for the purpose of producing a visual image offenses (i.e., production of child pornography), in violation of 18 USC §2251(a), which carries a fifteen year mandatory minimum sentence.   In taking into consideration what an appropriate recommendation would be, in addition to the charged conduct, the government also factored in the uncharged child pornographic images and production of child pornography that was recovered from the defendant's lawfully seized electronic equipment.

As stated herein, Keith Gage videotaped Minor A performing sex acts on three occasions over a period of two separate dates.[11]   The first date was on or about June 9, 2013, and the second date was on or about June 23, 2013.    Minor A provided authorities with details about the specific outdoor area where she and Gage met and engaged in sexual activity and as a result, USPIS located

---

10 Per USPIS, Gage's primary desktop computer had a BestBuy service tag on it dated 5/11/13.
11 Two of the three video files depicting Minor A appear to be on the same date and the second appears to be a continuation of the first video (i.e., listed on both video files as "20130609" which, per USPIS, is June 9, 2013).   The third video is listed on the video file as "20130623" which, per USPIS, is June 23, 2013.

the area which was the area depicted in the three videos identified herein.

The files and contents of each of the three videos are described below:

1. Video One is listed as "20130609_134501.mp4" and is a video file of approximately 7 minutes and 56 seconds in duration.   It depicts a wooded area where the minor victim enters the camera frame and converses with the male, Gage, who appears to be holding the camera.   While holding the camera, Gage asks the minor how old she is and she replies "fourteen" which he then parrots.   He then directs the minor victim to perform several acts including laying down on a blanket that she brought, spreading her legs, and showing her vaginal area to the camera.   In addition, Gage digitally penetrates the minor victim's vagina with multiple fingers and also has her perform oral sex on him, which she does.   There are only two voices on the video.

2. Video two is listed as "20130609_135623.mp4" and is a video file of approximately 3 minutes and 44 seconds in duration, and appears to be a continuation of the previous video file.   The minor victim is wearing the same clothes as in Video one (described above).   Gage, holding the camera, directs the minor victim to masturbate and he strokes her nipple with his hand, and he then masturbates himself until he ejaculates on the face of the minor victim.

3. Video three is listed as "20130623_135827.mp4" and is a video file of approximately 7 minutes and 5 seconds in duration and depicts the same wooded area as the previous two video files.   The minor victim enters the frame and is dressed in different clothes than in the above two videos.   Gage, holding the camera, directs the minor victim to strip off her clothes and to perform oral sex on him which she does.   Additionally, he asks her what she likes and she says something to the effect of 'being dominated'.   Gage repeats that phrase.   Gage also slaps her in the face on multiple occasions while she is performing oral sex on him and while he masturbates in front of her.

All three videos occur during the daytime.   At several points throughout the various videos,

Gage asks the minor victim how old she is and she replies that she is fourteen.

Two days after reporting the events to the police, the fourteen year old minor victim

attempted to take her own life after she wrote a two page suicide note.   Her parents discovered

her, authorities were contacted and Minor A was transported to a hospital.

### B. History and Characteristics of the Defendant

Keith Gage had attended Norwich University and according to him, obtained an

Associate's Degree from that university in 1992 (although U.S. Probation received

correspondence from Norwich University that confirmed his attendance there but noted that he left

the university on December 20, 1991, based on an academic dismissal (see PSR ¶ 89).   Gage also enlisted in the United States Marines, attained the rank of Corporal, and received several medals and citations in that capacity, including the Meritorious Unite Citation for serving in a war; the Presidential Unit Citation; Kuwaiti Liberation Aware; Good Conduct; and the Desert Storm bar. Due to medical problems with his knees, Gage discharged from the Marines, returned to Massachusetts, enrolled in Blue Hills Technical College and earned and Associates Degree in Construction Management in 1995 (unverified by U.S. Probation) (see PSR ¶¶ 91-92).   Gage has also been employed in security construction capacity, has owned a design/construction company and has been employed as a traveling supervisor.   At the time of his arrest, the defendant was employed as at project manager for a construction company in Massachusetts (see PSR ¶ 94).

In his interview with U.S. Probation, the defendant described a childhood absent of any abuse or neglect and indicated that his parents were financially stable. (see PSR ¶64).   His father passed away in 2004 and Gage stated he has maintained a close relationship with his mother and sisters, and is closest with the sister with whom he resided at the time of the execution of the state search and arrest warrants, describing her as his "best friend" (see PSR ¶¶67, 72).   Clearly the defendant is an intelligent and educated individual.   Yet instead of focusing his intelligence and skills on becoming a productive member of society, he chose to use his intellect to coerce and entice a fourteen year old minor victim into sexual activity on more than one occasion to whet his own sexual appetite.   The defendant intended to impose a far different childhood upon Minor A than the childhood he experienced.

During his interview with Probation, Gage stated he returned from the military in 1995. He drank during social occasions with his friend until he returned from the military at which time

17

his drinking increased.   He indicated he began drinking daily consuming up to 12 beers per day

during his heaviest period of use.   His alcohol consumption continued that way until his arrest by

the state on this instant offense.     He indicated his drinking became problematic and that he drank

because he felt like a failure and was depressed over ending his relationship with an ex-fiancée,

which, per Gage, ended in January, 2013.   Gage noted that his alcohol consumption probably led

to their break-up (see PSR ¶¶ 63, 76, 84-85).

### C.   A term of imprisonment of 180 months addresses the need for the sentence to reflect the seriousness of the offense, promote respect for the law, for the sentence imposed to afford adequate deterrence to criminal conduct, and to protect the public from future crimes of the defendant.

These factors address the specific containment, deterrent, and otherwise protective effect

that the sentence is to have on the defendant and on society as a result.   A sentence of 180 months

imprisonment accomplishes these goals.   The defendant's conduct is extremely serious and a 15

year sentence is a severe and significant sentence which is appropriate in this case.   Last year, this

then 42 year old man knowingly preyed upon the vulnerabilities of an eighth grader and did so on

more than one occasion.   On more than one occasion when he engaged in sexual intercourse with

Minor A, Gage gave her beer to drink.   Additionally, in order to try to insulate himself from

exposure, he even instructed Minor A to create a fictitious female name, namely Katlyn, to use as

a contact for Gage in Minor A' cell phone.   He went even further by videotaping the sexual acts of

this eighth grader that were done at his instruction and direction.   He also attempted to coerce and

entice an undercover USPIS inspector, whom Gage believed was Minor A, to meet up again in

order to engage in sexual intercourse.   A significant sentence is needed to account for this

conduct, to promote respect for the law, and to provide just punishment.

The United States submits that this significant period of incarceration will appropriately

serve as both a general and a specific deterrent to future conduct involving the exploitation of

children.    A sentence of 180 months imprisonment, reinforces to the defendant and to others who

are tempted to follow in his footsteps, that this crime is exceedingly grave in nature regardless of

whether or not the victim involved is a real child, thereby promoting respect for the law and

protecting the safety of the public.

### D.  The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct under 18 U.S.C § 3553(a)(6)

In consideration of the § 3553(a)(6) factor outlined above and in fashioning an appropriate

sentence in this case, the government urges the Court to examine the sentence imposed in another

enticement case involving the same minor victim, United States v. Stoloff, (Crim. No.

13-10310-FDS).   The government argues there are reasons why a higher sentence is warranted for

Gage than what was jointly recommended for Stoloff.   First, Stoloff involved a one-count

indictment for a violation of 18 U.S.C. §2422(b).   Gage involves a two-count indictment under

the same statute.   Second, Stoloff, who was 29 at all relevant times in the indictment, and Minor A

engaged in sexual intercourse on one occasion.   Gage and Minor A engaged in sexual intercourse

on more than one occasion.   Third, Stoloff did not have evidence of production of child

pornography recovered on his computer.   Videos of child pornography depicting Minor A which

were taken by Gage were recovered by authorities in this case.   Fourth, Gage physically assaulted

the minor victim.   There was no evidence that Stoloff did so.   Fifth, Stoloff pled guilty pursuant

to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C) to a joint recommendation of 10 years

which this Court imposed on October 1, 2014.

### E.  Impact on Minor A and her family

One cannot overstate the terrible impact the defendant's egregious actions have had on Minor A and on Minor A's family**.**   In short, it has caused them untold heartache.   Minor A's father submitted an impact statement which has been provided to U.S. Probation, defense counsel and this Court.   In it, Minor A's father expressed, among other things, that his entire family has not recovered from the criminal actions of Gage and that "these acts hang over our family like a burden or weight that can never be lightened."   The government expects to address this impact more fully at sentencing.

### III.   CONCLUSION

A sentence of 180 months fairly reflects the factors to be considered under 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, the need to deter the defendant and others, the need to protect the public from the defendant's crimes and the need to avoid unwarranted sentencing disparities.   This sentence is an appropriate and reasonable sentence and the government urges this Court to accept the plea agreement and impose the government's recommended sentence.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   s/ Suzanne Sullivan Jacobus
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

Dated:   October 20, 2014

20

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon the following counsel of record a copy of the foregoing document via electronic filing to:

Attorney Kevin Reddington
1342 Belmont Street
Suite 203
Brockton, MA 02301

s/ Suzanne Sullivan Jacobus
Suzanne Sullivan Jacobus
Assistant U.S. Attorney