1                       UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA,           )
                                         )
5                      Plaintiff,        )  Criminal Action
                                         )
6                                        )  No. 13-10305-FDS
     vs.                                 )
7                                        )
     KEITH GAGE,                         )
8                      Defendant.        )

9

10   BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

11

12                          SENTENCING

13

14

15        John Joseph Moakley United States Courthouse
                        Courtroom No. 2
16                     One Courthouse Way
                       Boston, MA 02210
17

18                     October 23, 2014
                         3:00 p.m.
19

20

21

22

23                     Valerie A. O'Hara
                     Official Court Reporter
24   John Joseph Moakley United States Courthouse
                 One Courthouse Way, Room 3204
25                     Boston, MA 02210
                   E-mail: vaohara@gmail.com

1    APPEARANCES:

2    For The United States:

3        United States Attorney's Office, by SUZANNE SULLIVAN
     JACOBUS, ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way,
4    Suite 9200, Boston, Massachusetts  02110;

5    For the Defendant:

6        Law Offices of Kevin J. Reddington, by KEVIN J.
     REDDINGTON, ESQ., 1342 Belmont Street, Suite 203,
7    Brockton, Massachusetts 02301.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS</u>

1

2          THE CLERK:  All rise.  United States District Court

3   for the District of Massachusetts is now in session, the

4   Honorable Judge Saylor presiding.  Today is Thursday,

5   October 23rd, 2014.  The case of U.S. v. Gage, Criminal Action

6   No. 13-10305 will now be heard.

7          Would counsel please identify themselves for the

8   record.

9          MS. SULLIVAN:  Good afternoon, your Honor,

03:00PM 10   Suzanne Sullivan on behalf of the United States.

11          THE COURT:  Good afternoon.

12          MR. REDDINGTON:  Good afternoon, your Honor,

13   Kevin Reddington on behalf of Mr. Gage, who is before the

14   Court.

15          THE COURT:  All right.  Good afternoon.  Please be

16   seated.  This is the sentencing of Keith Gage pursuant to an

17   11(c)(1)(c) plea agreement, which I, having reviewed the

18   pre-sentence report, now accept.

19          I have received and read the pre-sentence report as

03:01PM 20   revised through October 15th, the plea agreement from last

21   July, the defendant's sentencing memorandum dated October 21st,

22   the government's sentencing memorandum filed October 20th, a

23   letter from the father of the victim, and I think that is it.

24          Is there anything else I should have seen that I have

25   not, Ms. Sullivan?

 1          MS. SULLIVAN:  I don't believe so, your Honor.

 2          THE COURT:  Mr. Reddington?

 3          MR. REDDINGTON:  No, your Honor.

 4          THE COURT:  All right.  Mr. Reddington, have you had

 5     an opportunity to review the pre-sentence report?

 6          MR. REDDINGTON:  Yes, your Honor, I went down to

 7     Wyatt, and I sat with Mr. Gage for a very significant length of

 8     time, and we did review the report.  We have no objections to

 9     the report.

03:02PM 10          THE COURT:  Is that correct, Mr. Gage?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Ms. Sullivan, are there any victims or

13     representatives of the victim who are present and wish to

14     participate?

15          MS. SULLIVAN:  Not at today's hearing, your Honor,

16     no, but they have been notified pursuant to 18 U.S.C,

17     Section 3771, Subsection (a).

18          THE COURT:  All right.  I don't understand that there

19     are any objections to the pre-sentence report, but there is

03:02PM 20     a -- and it's probably a purely academic exercise at this

21     point, but there is a difference between what the parties

22     agreed was the base guideline, base offense level guideline and

23     what the pre-sentence report says.

24          The PSR makes it a Level 32 as opposed to a Level 28.

25     I think probably under the plea agreement, the government

1  cannot advocate for a 32, but you could explain, I think, why

2  you think 32 is wrong and why it ought to be 28.  Ms. Sullivan,

3  do you have a view on the discrepancy?

4        MS. SULLIVAN:  Your Honor, the cross-section that was

5  utilized in the PSR takes into effect that there was evidence

6  of production of child pornography that was recovered on some

7  of the electronic equipment that was lawfully seized at

8  Mr. Gage's residence.

9        The government did not charge the defendant with that

03:03PM 10  particular statute, and if the government had, then the

11  defendant would be facing a 15-year mandatory minimum, and by

12  the government's calculations the cross-section and

13  cross-reference calculations would have been applied.

14        We negotiated the plea agreement on the charges as

15  they currently stood, which were two counts of an 18 U.S.C.,

16  Section 2422.  One was coercion and enticement of a minor, and

17  the second was attempted coercion and enticement of a minor.

18        We did take into consideration the evidence that was

19  found but not charged in negotiating the plea, so I do not

03:04PM 20  believe that the probation department has miscalculated or

21  erroneously calculated using the cross-reference, but when

22  Mr. Reddington and my office, including myself, negotiated the

23  plea agreement, we took into consideration what the guideline

24  calculations would be on the coercion and enticement.

25        THE COURT:  All right.  Again, I think it's purely

1    academic, but I'm supposed to come to a final resting point.

2    Mr. Reddington, do you --

3        MR. REDDINGTON:  I agree, your Honor, we've spent a

4    significant period of time negotiating this matter involving

5    supervisors, a number of people.  We did talk about the various

6    charges.  We talked at length about the evidence.  We did in

7    the plea agreement recommend to the Court that he would be

8    pleading to the two indictments.

9        I understand how the probation calculations came out

03:04PM 10    with that discrepancy, but just as counsel for the government

11    asked, I would ask that the Court adopt what has been placed in

12    the plea agreement.

13        THE COURT:  All right.  What I'm going to do is this.

14    I think it's not going to make any difference whatsoever here,

15    but I'm going to leave the PSR where it is.  The guideline

16    calculation is supposed to be based on real offense as opposed

17    to charging offense.  It's purely academic, and it won't affect

18    the sentence, but I think as a technical guideline matter, the

19    PSR is correct, and so I'm going to leave it where it is.

03:05PM 20        So that's a base offense level of 32.  With two

21    adjustments based on the age of the victim and the use of a

22    computer brings us to a 38.  There's a three-level adjustment

23    for acceptance of responsibility on government motion,

24    Ms. Sullivan.

25        MS. SULLIVAN:  Yes, your Honor, we do so.

1          THE COURT:  The motion is granted.  That produces a

2   criminal history score of 0, a criminal history category of I,

3   there is a mandatory minimum of 120 months, the guideline range

4   is 168 to 210 months.

5          The parties' recommendation or rather agreed upon

6   range in the PSR is 156 to 180, the supervised release range is

7   five years to life, the fine range is $20,000 to $200,000 and

8   the$200 special assessment is mandatory.

9          Is there any further addition or correction not

03:06PM 10   already discussed to the guideline calculation, Ms. Sullivan?

11          MS. SULLIVAN:  Not with the calculations, no.

12          THE COURT:  Mr. Reddington?

13          MR. REDDINGTON:  No, your Honor.

14          THE COURT:  Ms. Sullivan, what's the status of

15   restitution?

16          MS. SULLIVAN:  Your Honor, as the Court is aware,

17   there was an unrelated defendant but involving the same minor

18   victim who was before the Court for sentencing on October 1st.

19   On that date, the government had an opportunity to speak with

03:06PM 20   defense counsel on that particular case and inform the Court

21   that we had not received any restitution documentation.

22          We have asked the United States Postal Inspector

23   Services to reach out to the victim's parents, and that has

24   been done, but to date we have not received any restitution.

25          I understand that the Court has put on a date for a

1    restitution hearing on the other case.  I would ask the Court

2    to do the same to give us the opportunity to see if we do

3    receive restitution.  I know restitution is mandatory under the

4    statute.  I'm not trying to prolong or delay this, but I would

5    like to have the opportunity to confirm one way or the other

6    whether the minor victim's family wishes to seek restitution

7    from the defendant in connection with this case.

8            THE COURT:  All right.  I have no problem with that.

9    I mean, I guess it also raises the question if restitution is

03:07PM 10   mandatory, and we don't have any documentation.  Does that mean

11   I should order a relatively nominal amount, $100?  I don't know

12   the answer to that, but that's something I think maybe the

13   government and counsel ought to think about.  As I read the

14   statute, I'm supposed to do something.

15           MS. SULLIVAN:  Yes.

16           THE COURT:  So the proposal is that I set it for a

17   restitution hearing down the road and we see how this plays

18   out, correct?

19           MS. SULLIVAN:  That would be my request, and I'm not

03:08PM 20   asking for a long period of time either, your Honor.

21           THE COURT:  Mr. Reddington, what's your view of that?

22           MR. REDDINGTON:  I agree with that.  I understand the

23   statute does indicate that it's mandatory, and so whatever date

24   we agree to is fine.

25           THE COURT:  Why don't we do it at around the time, do

1   you know the date of the --

2          MS. SULLIVAN:  I believe it's October 31st.

3          THE COURT:  All right.  That's actually coming up

4   fairly quickly.  I'll tell you what, I don't need to set that

5   date now.  Why don't we put that on hold for the time being.

6          All right.  With that as our framework, let me hear

7   from the government as to its recommendation.

8          MS. SULLIVAN:  Thank you, your Honor.  Your Honor,

9   although the now 15-year old victim and that individual's

03:08PM 10   parents have chosen not to be present for today's hearing, the

11   minor victim's father has submitted an impact statement to the

12   Court, a copy of which has been previously provided to the

13   Court, probation as well as defense counsel.

14          In it, among other things, the father of this then

15   14 year-old daughter explains how entire family has been

16   devastated by what this defendant has done.  He explains how

17   the family has not recovered, and he indicates that "these acts

18   hang over our family like a burden or a weight that never can

19   be lightened.  It never leaves our minds like we are sentenced

03:09PM 20   to a life-long suffering."

21          He does end the statement with the following:  "Your

22   Honor, I seek no vengeance but knowing how I suffer, I want him

23   in jail for as many years as the Court can sentence him so that

24   other families will not have to suffer as we do."

25          As the Court is well aware, the parties have submitted

1    the (c) plea to the Court for your consideration, and in it we

2    agree on all parts of it except for the actual term of

3    incarceration, and in that particular subsection, we're not

4    even that far apart.  It's a difference of 24 months, 13 to 15

5    years, so the government has submitted its sentencing

6    memorandum and laid out what our recommendation is, and it's as

7    follows:

8         We're asking the Court to impose the 15-year period of

9    incarceration on Mr. Keith Gage followed by five years of

03:10PM 10   supervised release with the specific conditions.  We're asking

11   for forfeiture as determined by the Court, which is outlined in

12   Subsection 10 of the plea agreement, which is contained on

13   pages 6 and 7.

14        I will tell the Court that at the plea relative to

15   Mr. Gage, when I was providing the statement of facts to the

16   Court, at one point at the plea hearing, I did indicate to the

17   Court that there may be some items that the government will

18   agree to return to the defendant's family, and we needed to

19   confirm whether there was any evidence of either child

03:10PM 20   pornography or criminal activity on some of those items.

21        We have now been able to confirm that there is five

22   items listed on the plea agreement that the government would

23   agree to return to the defendant's sister, and I have informed

24   Mr. Reddington, I've discussed this with him, and if the Court

25   wishes, I have also highlighted them.  They're Section A, I, J,

1    K and L that are on the plea agreement, so I just wanted to

2    make sure I didn't forget to at least put that on the record.

3    I'm happy to provide that to the Clerk or to the Court should

4    the Court wish to have that.

5              THE COURT:  I think that's good enough for now.

6    A, I, J, K and L?

7              MS. SULLIVAN:  A, I, J, K and L, yes, your Honor.  In

8    addition, it's not specifically identified, but there were some

9    recordable media in the form of CDs and DVDs that apparently

03:11PM 10   contained family photographs and such, and the defendant's

11   sister has requested that those items be returned, and we would

12   agree to do that as well.

13             THE COURT:  All right.

14             MS. SULLIVAN:  Your Honor, other than that particular

15   aside, we're asking you to adopt the other conditions that are

16   part and parcel of the plea agreement.  We are asking for the

17   restitution as determined by the Court, the $200 special

18   assessment, and also, in addition, during the entire period of

19   incarceration and the entire period of supervised release, in

03:11PM 20   the plea agreement, the parties have requested that this Court

21   order a no contact direct or indirect with the minor victim in

22   this particular case.

23             Additionally, as a consequence of his convictions on

24   these two crimes, pursuant to the Sex Offender Registration and

25   Notification Act and the laws of the Commonwealth of

1    Massachusetts, Keith Gage is required to register as a sex

2    offender and to keep that registration current in the place

3    where he resides, is employed or where he is a student.  This

4    requirement is also contained fully in the fully executed plea

5    agreement.

6         Your Honor, this 42-year-old defendant, at the time

7    42-year-old defendant was three times the age of the

8    14-year-old eighth grade victim in this particular case.  Two

9    days after she reported to the authorities what this defendant

03:12PM 10   and other individuals whom she had met on a particular website

11   had done to her, she tried to take her own life.

12        She wrote a handwritten suicide note that contained,

13   among other things, words to the effect of, "I just don't want

14   to face high school knowing the torture I might go through."

15   She explains that she took pain killers so it wouldn't hurt

16   because, according to her, "It hurts like hell."

17        This eighth-grader left this note for her parents, and

18   they're the individuals who found her, and she was transported

19   to a local hospital.  She has struggled as a result of the

03:13PM 20   defendant's criminal actions.  The defendant did plead guilty

21   in this case back on July 11th to the two-count indictment in

22   this case, your Honor.  He does face the 10-year mandatory

23   minimum for a conviction of each of the two offenses, and I

24   would suggest to the Court that that reflects the seriousness

25   with which Congress and also the Sentencing Commission view the

1    sexual exploitation of minors.

2           The government strongly believes that the 15-year

3    period of incarceration that we recommend is warranted in this

4    case.  I would suggest to the Court that it accounts for the

5    3553(a) factors which the Court must consider, which includes

6    the nature and circumstances of the offense, which I've

7    outlined in the statement of fact conduct that I provided to

8    probation and also outlined in the sentencing memorandum that

9    I've submitted to the Court.

03:13PM 10           It also takes into consideration the history and

11    characteristics of Keith Gage.  It reflects the serious nature

12    of his repeated and heinous criminal conduct, it promotes

13    respect for the law, it affords adequate specific and general

14    deterrence, and it also protects the public from future crimes

15    of the defendant.

16           Turning to the nature and circumstances of the case,

17    your Honor, as the Court is well aware from the details that

18    had been provided at the plea and in the PSR, Keith Gage

19    knowingly and intentionally preyed upon the vulnerabilities of

03:14PM 20    a junior high school student, specifically an eighth-grade

21    female.

22           He did so by coercing and enticing her online to have

23    sexual intercourse with him on more than one occasion, which

24    she ultimately did when the two of them met in person.

25    Thereafter, he also attempted to coerce and entice who he

1   believed was this same minor victim but who in reality was at

2   that point an undercover United States Postal Inspector Service

3   agent.  Believing that person to be the minor victim, he

4   attempted to coerce and entice that person to meet with him and

5   to engage in sexual intercourse.

6           This is a man who is three times the age of the

7   victim.  His own words demonstrate that he knew what he was

8   doing was wrong, your Honor.  He instructed this minor victim

9   to save his contact information in his cell phone under the

03:15PM 10   name of a female, a fictitious name of Caitlin in order for

11   Keith Gage to avoid detection.

12           After they had had sex, he directed this victim to

13   delete all messages from him and to change this fictitious name

14   of Caitlin in his cell phone.  He texted her that he thought

15   that they had been caught and discovered, that her parents had

16   found out about them and that the police had been called on him

17   and that he'd be going to jail.  He chose to prey about this

18   young girl, and he manipulated her, I would suggest to the

19   Court, all for his own sexual gratification.

03:15PM 20           I think it's also important to point out, your Honor,

21   that Mr. Gage's actions were not isolated.  His communication

22   with this minor victim herself spanned approximately three

23   months from May of 2013 up until the date that she reported

24   this to the local police department on August 24th, 2013, and

25   thereafter beginning that same date or same evening of

1    August 24th going into September of 2013, that's when he

2    continued to have communications with who he believed was the

3    minor victim, but at that point it was an undercover postal

4    inspector.  Regardless of his intellect, his education, his

5    work and his military service, Mr. Gage repeatedly sought out

6    this eighth-grader for purposes of sexual coercion and

7    enticement.

8            As the Court is aware, the two of them met online,

9    exchanged phone numbers and began texting.  There were

03:16PM 10   approximately 1634 text messages between the minor victim and

11   the defendant between May 25th of 2013 and August 24th of 2013,

12   and thereafter approximately another 191 texts between the

13   defendant and the undercover from August 31st to a mere 13 days

14   later, September 13 of 2013.

15           There were e-mails and Skype that occurred between the

16   defendant and the minor victim, and eventually those two

17   individuals met up in person where the defendant engaged in

18   sexual intercourse on at least two occasions with this young

19   girl.  This was all done in secret unbeknownst to the victim's

03:16PM 20   parents.  During the times that they met and engaged in various

21   forms of sexual activity and sexual acts, the defendant gave

22   alcohol to this 14 year-old girl.

23           In addition, your Honor, the defendant physically

24   assaulted this minor, and that is captured on one of the videos

25   that the defendant himself took of her while he instructed her

1    to perform various sexual acts.

2             On at least three occasions, the defendant videotaped

3    the victim performing sexual acts.  Two of those occurred on

4    the same day and a third occurred on a separate day.  On the

5    tape, the defendant is heard asking the victim how old she is,

6    to which she replies 14.

7             The victim went and met this defendant after the two

8    of them had these communications online, and after this

9    occurred, the defendant continued to communicate online with

03:17PM 10   the undercover believing him to be her in a further attempt to

11   entice and coerce this young girl.

12            During the communications between the undercover and

13   the defendant, he even sent a text to her indicating that he

14   wanted to engage in a particular type of sexual activity, that

15   being anal intercourse.  He communicated online with the victim

16   and with the undercover his desire to participate in different

17   sexual acts and activities.

18            When he spoke with the victim, he also talked about

19   participating in a gang rape of this 14 year-old girl, and on

03:18PM 20   at least one occasion while Skyping with her, the defendant was

21   masturbating.

22            The texts to the victim were very sexually graphic.

23   Some of the texts that she replied also contained sexually

24   graphic information as well.  The defendant describes with

25   specificity what he will do sexually to the victim.  He talks

1    about wanting to tie her up, wanting to dominate her, wanting

2    to gang rape her with several of his co-workers and friends,

3    and he mentions somewhere in the range of 6 to 8 other men

4    taking turns having sexual activity with this minor.

5         He talks of the victim being his 14-year-old sex

6    slave.  He discusses wanting to take pictures and recording the

7    two of them having sex.  He's indicates that he's worried about

8    being caught by authorities.  He dictates what type of clothing

9    she would wear.  He wants to get her drunk, according to some

03:19PM 10    texts that he sends her, and he tells her what poses he wants

11   her to be in in various sexual positions.

12        The search warrant in this case was executed on

13   September 16th of 2013, your Honor.  As a result, computers,

14   cell phones, electronic equipment, among other items, were

15   seized, and the forensic examination was conducted of the

16   equipment that was seized in this case.

17        Child pornography was found on the defendant's

18   computer or computers.  There was approximately 35 images of

19   child pornography that were recovered from a computer.  In

03:19PM 20   addition, there were seven videos containing child pornography.

21   Three of those seven videos depicted this minor victim.

22        The government took this into consideration in

23   negotiating a plea agreement in this case, your Honor.  If the

24   defendant had been charged with one count of child pornography

25   and no other count, he would be facing a 15-year mandatory

1     minimum in and of itself for that one count.

2              The government would also suggest to the Court that in

3     addition to the nature and the circumstances, it's important

4     under the 3553(a) factors for the sentence to reflect the

5     seriousness of the offense, to also promote respect for the law

6     and to afford adequate deterrence to criminal conduct.  The

7     government believes that the 15-year sentence that it

8     recommends accomplishes these goals.

9              I would suggest that it provides for both specific and

03:20PM 10    general deterrence to future conduct by this defendant and any

11    other individuals who either are thinking of or have been

12    involved in the sexual exploitation of minors.  It reinforces

13    to this defendant and to others the severity of these crimes

14    and the consequences if you are caught committing these

15    offenses.

16             In addition, your Honor, I thought that it was

17    important to point out to the Court another factor under the

18    3553(a) factors, and that would be the need to avoid

19    unwarranted sentencing disparities among defendants with

03:21PM 20    similar records, and so I thought incumbent upon me to point

21    out to the Court what I see as the difference between this case

22    and the prior case that was before your Honor involving the

23    same minor victim.

24             In that case, your Honor, there was a one-count

25    indictment versus this case with two.  In that case, there was

1   a single encounter between the minor victim and the defendant

2   who engaged in sexual intercourse on one occasion.  Here, we're

3   talking multiple occasions.  In this case, there's evidence of

4   production of child pornography that was recovered on the

5   defendant's computer and computer equipment, which was not the

6   case in the previous one before you.  In this case, there's

7   physical assault by the defendant on the minor victim, which is

8   different from the last.

9           And the government believes this is very important,

03:21PM 10   these factors are very important, and we took those into

11   consideration when we thought we made an appropriate

12   recommendation in the plea agreement and in our sentencing

13   memorandum, and so for all of the reasons that I've outlined

14   today, for all of the reasons that I've discussed in the

15   sentencing memorandum that I filed with the Court, the

16   government believes that the 15-year sentence that we recommend

17   is an appropriate one, and it satisfies and accomplishes the

18   3553(a) factors, and it's not greater than necessary, and we

19   would ask the Court respectfully to impose the sentence that

03:22PM 20   the government has recommended, and I thank you for your time.

21           THE COURT:  All right.  Thank you.

22           Mr. Reddington.

23           MR. REDDINGTON:  Thank you, Judge.  Your Honor, I am

24   on behalf of Mr. Gage asking that in accordance with our plea

25   agreement that the Court impose the sentence of 13 years or the

1    156 months, low end on the plea agreement.

2         The reason I'm asking for that, your Honor, is this is

3    a very -- I find in my experience and my practice a rather

4    unusual case consistent with 3553(a) factors which counsel has

5    referenced, and your Honor is well aware, is almost like the

6    bedrock of sentencing now.  At least it puts a little bit of

7    judicial discretion, weighing, consideration.  It's a very

8    important factor in the sentence that the Court would

9    ultimately craft and impose.

03:23PM 10        Mr. Gage has readily acknowledged the criminal

11   conduct, the inappropriate conduct.  He is embarrassed, he's

12   ashamed, he is truly humiliated and readily accepts his

13   punishment whichever your Honor feels is appropriate, but when

14   you consider the other 3553 factors and what gives the Court

15   the ability to weigh and consider the person that you're

16   sentencing, you look at the pre-sentence report, you see a

17   young man who was raised in Easton.  He was raised with a

18   loving family.  He's got extremely strong family support.

19        Members of his family have been with him throughout

03:23PM 20   this process, his sister, his mother, they're here, they still

21   support him and they still embrace him, not only as a brother

22   but as a guy they know has good, decent qualities in him, so we

23   have a 44-year-old man with, as counsel indicated, I think

24   criminal history 1 or 0, if you will, who was educated in the

25   Town of Easton.  He's a hard-working guy, and he joins the

1    military.

2         He goes into the United States Marine Corps.  He does

3    very well.  He's a combat veteran from Iraq.  He went through a

4    significant -- let's just say he went through significant

5    combat as a result of which, your Honor, it's documented he has

6    extreme post-traumatic stress disorder.

7         I know that you know that one of the side effects, if

8    you will, or kind of like the self-medication is that people

9    start drinking or they start drugging trying to handle the

03:24PM 10   stress and the problems and the inability to sleep and the mood

11   swings and their psyche that gets tipped somewhat off edge.

12   Well, that's exactly what he did.

13        He was engaged to a young woman who was a doctor.

14   They had great life plans, and then this whole thing comes

15   tumbling down.  He ends up drunk constantly, whether it's

16   numbing or trying to combat, if you will, the demons that he

17   was struggling with and the PTSD, and it was at this stage in

18   his life, kind of like a functioning alcoholic.  He was a

19   hard-working man.  He drove a truck.  Your Honor has all the

03:25PM 20   documentation.  He had for the purposes of construction, he's

21   got construction certificates, construction degrees as far as

22   planning, construction projects, always worked hard.

23        Everything kind of came down on him.  He ended up

24   breaking up his fiancee'.  That relationship went south, and he

25   ended up, with the good graces of his sister, Heather, who is

1    here, she allowed him to live in her house.  It was at that

2    period of time, your Honor, that he just went wildly off the

3    chart, he was drinking heavily, and this unfortunate situation

4    arose.

5          So here we are where we have to sentence a man, one of

6    the standards under 3553 as well as the sentencing guidelines

7    is that the sentence would not be greater than necessary to

8    punish the person.

9          Well, as counsel noted, the legislature has determined

03:26PM 10    that a 10-year, decade, mandatory minimum sentence for this

11    type of an offense is appropriate.  That's a significant

12    sentence, and here with the plea agreement, we're looking at a

13    bottom line, if you will, of a 13-year.

14          Now, your Honor, I know you're familiar with back a

15    number of years ago second degree murder in Massachusetts was

16    15 years parole eligibility.  That's a long time.  Thirteen

17    years is a significant time, then to be in the position of

18    registering as a sex offender, which obviously protects the

19    public, being in a position of being on supervised release,

03:26PM 20    which I suspect is fine because I think he will, when he gets

21    out, be a hard-working member of society, but for purposes of

22    the sentencing, your Honor, I would ask that the Court in some

23    fashion look at Mr. Gage not with repugnance or disgust and

24    say, you know, how could you do that, because he sits there,

25    and he knows what he did, and, as I say, he is very humiliated,

1    and he would like the opportunity to allocute, which I know you

2    would mention to him anyway, but I'm just asking that if your

3    Honor is able to say that there is good in this man, he has

4    done good and he will do good.

5    He's adjusted, he's been in Wyatt all this time, he's

6    been down there, he gets along with everybody.  I mean, he's

7    well-liked by the administration, the staff, the inmates.  I

8    would suggest to the Court 13 years is a significant time, and

9    I'd ask that you go for the low end of that plea agreement.

03:27PM  10    THE COURT:  All right.  Thank you.  Mr. Gage, do you

11    wish to address the Court before I impose sentence?

12    THE DEFENDANT:  Yes, your Honor.  I'd like to

13    apologize to the victim and her family for any damage I've

14    done, to my family for the headache, the heartache and turmoil

15    and to you and the Court for what we have to go through.

16    That's it.

17    THE COURT:  Okay.  Thank you.  What I'm going to do is

18    this:  I'm going to impose the 156-month sentence.  It's a very

19    long sentence.  I don't mean by doing so to suggest in any way

03:28PM  20    that I think the crime is not serious or otherwise to suggest

21    that in some way that I'm giving the defendant a break.  I'm

22    not.

23    I think under the circumstances that a 13-year prison

24    sentence, which is very long, there's no parole, although

25    there's good time, is sufficient under the circumstances to

1    impose the appropriate level of punishment.

2          In addition, as Mr. Reddington points out, collateral

3    consequences will follow the defendant really for the rest of

4    his life beginning with registration as a sex offender, which

5    will have an impact on where he can live, where he can work,

6    what he can do and so on, and I think taken together with the

7    five-year supervised release, which is going to have some

8    stringent conditions, that 18 years in the criminal justice

9    system plus registration as a sex offender is sufficient under

03:29PM 10    the circumstances.

11          As is customary in this case, we have a lengthy series

12    of conditions of supervised release.  Mr. Reddington, what I

13    would propose to do is to summarize those.  The actual text

14    will be put in the final judgment.  I can read them allowed if

15    you want.

16          MR. REDDINGTON:  That's fine, your Honor, I did

17    actually go over them with him.

18          THE COURT:  That was going to be my question is

19    whether you had gone over the proposals with him.  I do want to

03:30PM 20    note that with respect to some of these restrictions,

21    particularly the computer restrictions, it's hard to know what

22    the world is going to look like 10 or 13 years from now.

23          My intent is to permit the defendant to be a

24    functioning member of society, to use communication devices in

25    order to work or to educate himself or to fit in to society as

1    best he can while still providing for appropriate monitoring

2    and supervision.

3         That's hard to do today, much less trying to predict

4    what the world is going to look like in the future, but these

5    conditions may need to be modified, and I simply am stating my

6    intention here so that when and if the time comes, the idea is

7    not to completely cripple the defendant's ability to function

8    in a modern society but to have appropriate restrictions and

9    monitoring, supervision to make sure that he's not abusing the

03:31PM 10    computer or use of the Internet and obviously particularly not

11   using it to view inappropriate images.

12        So with that, what I'm going to do is to formally

13   state the sentence I'm going to impose.  I'm going to then

14   formally state the reasons, and I will give counsel an

15   opportunity to make any final objections or corrections before

16   I finally impose the sentence.

17        Would the defendant please stand.  Pursuant to the

18   Sentencing Reform Act of 1984 and having considered the

19   sentencing factors set forth at 18 United States Code,

03:32PM 20   Section 3553(a), it is the judgment of the Court that the

21   defendant, Keith Gage, is hereby committed to the custody of

22   the Bureau of Prisons to be imprisoned for a term of 156

23   months.

24        This term consists of 156 months on Counts 1 and 2 to

25   be served concurrently.  The Court makes a judicial

1    recommendation that the defendant participate in the Bureau of

2    Prison's Residential Drug Abuse Program due to his substance

3    abuse history and based on an informal prescreening performed

4    by probation.

5        The Court makes a further judicial recommendation that

6    the defendant be designated to an institution commensurate with

7    security where the defendant can participate in sex offender

8    treatment, and the Court makes a further judicial

9    recommendation that the defendant be designated to an

03:33PM 10   institution commensurate with security and his mental health

11   needs as close as possible to Middleborough, Massachusetts.

12       Upon release from imprisonment, the defendant shall be

13   placed on supervised release for a term of five years.  This

14   term consists of terms of five years on Counts 1 and 2, such

15   terms to run concurrently.  Within 72 hours of release from

16   custody of the Bureau of Prisons, the defendant shall report in

17   person to the district to which the defendant is released.

18       While on supervised release, the defendant shall

19   comply with the following terms and conditions:

03:33PM 20       The defendant shall not commit another federal, state

21   or local crime and shall not illegally possess a controlled

22   substance.

23       The defendant shall refrain from any unlawful use of a

24   controlled substance.

25       The defendant shall submit to one drug test within 15

1    days of release from imprisonment and at least two periodic

2    drug tests thereafter, not to exceed 104 tests per year as

3    directed by probation.

4          The defendant shall submit to the collection of a DNA

5    sample as directed by probation.

6          The defendant shall comply with the standard

7    conditions that have been adopted by the Court which are

8    described in Section 5D1.3C of the Sentencing Guidelines and

9    which will be set forth in detail in the judgment.

03:34PM 10          The defendant is prohibited from possessing a firearm,

11   destructive device or other dangerous weapon.

12          The defendant is not to consume any alcoholic

13   beverages.

14          From this point forward, I'm going to summarize the

15   conditions.  Again, they're going to be set forth in detail in

16   the judgment.  This is intended only as a summary.

17          One condition of supervised release will be that the

18   defendant will participate in a program for substance abuse

19   counseling, including testing not to exceed 104 tests per year

03:35PM 20   to determine whether the defendant is using alcohol or drugs.

21          The defendant shall participate in a mental health

22   treatment program.  The defendant shall register as a sex

23   offender within three business days from his release from

24   prison, and he'll keep that registration current in any

25   jurisdiction where he lives, works or is a student and shall

1    within three days of any change in name, residence, employment

2    or student status appear in person and in at least one

3    jurisdiction make the necessary changes.

4         I'm also warning the defendant that violating that

5    condition may be a new federal crime that's punishable up 10

6    years in prison, and you do need to read and sign a form that

7    gives you notice and acknowledges your duty or has you

8    acknowledge your duty to register.

9         I'm going to order that you participate in a sexual

03:36PM 10   specific evaluation or sex offender specific treatment

11   conducted by a sex offender treatment provider as directed and

12   approved by probation.  That's going to include various

13   requirements, among other things, that you submit to testing.

14   You may be required to submit to a polygraph exam.  If you do,

15   you don't waive your Fifth Amendment rights, and your exercise

16   of those rights will not give rise to a violation proceeding

17   and will not be used as evidence to prove violation, however,

18   it may be considered in a hearing to modify release conditions

19   and could initiate a separate investigation.

03:36PM 20        I'm going to order that you not possess or use a

21   computer or Internet-capable device or similar electronic

22   device or have access to any online service without the prior

23   approval of probation.

24        I'm going to direct that you allow probation to

25   install computer Internet-monitoring programs on any computer

1    or similar device to which you have access unless it's one

2    that's owned by your employer.  The program is designed or will

3    be designed to identify for probation any inappropriate viewing

4    or uploading or transmitting of sexual or inappropriate images,

5    and you're ordered not to remove or attempt to defeat those

6    systems and to allow probation to examine such a computer and

7    receive data from it.

8         You're to advise anyone who lives with you in your

9    household that any computer might be subject to monitoring.

03:37PM 10   Any device that you possess or use shall not be used to access

11   child pornography or communicate with any individual or group

12   to promote sexual relations with children.

13        You're not to enter chatrooms or send or receive

14   instant messages or send or receive e-mail with file

15   attachments in any way unless probation approves, and you're

16   not to use any sex-related websites, telephone services or

17   electronic bulletin boards.

18        You're to disclose all your account information to

19   probation for Internet access, social networking, e-mail,

03:38PM 20   including names and passwords.  You're to provide a list of any

21   software or hardware on your computer system as well as service

22   provider billing records if probation asks for it.

23        You're to ask -- if probation asks you, you're to give

24   any financial information so that they can monitor these

25   conditions, including things like credit cards bills, telephone

1    bills and cable bills.

2            You're not to have any direct or indirect contact with

3    children under the age of 18 except in the presence of a

4    responsible adult who's aware of the nature of your background

5    and this offense and who's been approved by probation.

6            You're not to have any direct or indirect contact with

7    the victim or with her family.  If you do have any incidental

8    contact with a child or the victim or the victim's family,

9    you're required to remove yourself from the situation at once

03:39PM 10    and to notify probation.

11            You're to consent to disclosing to any employer or

12    potential employer any computer restrictions that you have

13    unless probation excuses it in advance.  You're not to take a

14    job that will cause you to come in direct contact with children

15    unless probation approves it in advance.

16            You're not to participate in any volunteer activities

17    that will cause you to come into direct contact with children

18    unless probation approves it in advance, and that includes not

19    only face-to-face contact but indirect contact, over the

03:39PM 20    Internet, by telephone and so on.

21            You're not to accept a job without the approval of

22    probation so that they can assess the risk to the community

23    that you may pose if you hold a particular job.

24            Again, that's a summary of these conditions.  There's

25    more detail, and there will be more detail in the actual

1    conditions of supervised, release and, again, my intention

2    because some of these may need to be modified down the road is

3    to permit you to have an education, to hold a job and otherwise

4    function in the community while providing appropriate

5    restrictions and monitoring and controls, and I'm further

6    ordering that you pay to the United States a special assessment

7    of $200, which will be due immediately.

8         All right.  You may be seated.  In terms of the formal

9    reasons for the sentence, it's a sentence within the range

03:41PM 10   agreed to by the parties in a binding plea agreement under

11   Rule 11(c)(1)(c).  It is technically a non-guideline sentence

12   imposed under Section 3553(a), which I think is appropriate

13   under the circumstances for the reasons indicated.  A period of

14   five years of supervised release is appropriate to ensure

15   adequate supervision.

16        I'm imposing no fine based on the defendant's

17   financial resources and in light of the fact that the combined

18   prison term and period of supervised release is sufficiently

19   punitive that no additional sanction is required.

03:41PM 20        I'm deferring for the time being the entry of any

21   restitution order pending a future hearing, and the special

22   assessment is mandatory.

23        All right.  Do counsel have any addition or correction

24   or objection to that sentence not previously raised?

25   Ms. Sullivan.

1          MS. SULLIVAN:  Only one qualification, your Honor.

2          THE COURT:  Yes.

3          MS. SULLIVAN:  In the plea agreement, the parties have

4    requested that the no contact direct or indirect with the minor

5    victim be for the pendency of both the incarceration period and

6    the supervised release period.

7          THE COURT:  All right.  Do I have -- is there any

8    question with my power to do that?  I think it's a good idea.

9    In other words, I can impose conditions of supervised release?

03:42PM 10          PROBATION OFFICER:  It may be a judicial

11   recommendation.  I don't know how it applies with the Bureau of

12   Prisons.  I'm not sure if there's a condition that can be

13   applied.

14          THE COURT:  Mr. Reddington, what's your view?  In

15   other words, the question is obviously I can restrict his

16   contact while on supervised release, the question is while he's

17   an incarcerated prisoner, can I impose a condition he not have

18   contact?  I mean, I think it's a sensible idea.

19          MR. REDDINGTON:  Yes, I've had cases before where

03:42PM 20   other Judges have done that in the state system where they've

21   entered an order that one of the terms and conditions of the

22   sentence imposed would be no contact with the victim or the

23   victim's family to obviously prevent telephone contact or

24   letter writing and things like that, so we would have no

25   objection to that, your Honor.

1          THE COURT:  All right.  Here's what I'm going to do.

2     I'm going to impose that as part of the sentence that he have

3     no contact with the victim or the victim's family during the

4     pendency not only of the supervised release but the prison

5     sentence.  In the event that there is an issue as to my

6     authority to do that, it will be a judicial recommendation that

7     the Bureau of Prisons adopt the same.

8          All right.  Mr. Reddington, anything further?

9          MR. REDDINGTON:  No, your Honor, I think it's very

03:43PM 10    thorough, no problem.

11         THE COURT:  The sentence is hereby imposed as stated.

12    There is a forfeiture order which will be made part of the

13    judgment, and there is a waiver of appeal, as I understand it.

14         Mr. Gage, I understand that you have waived your right

15    to appeal your conviction and sentence.  Nonetheless, I'm going

16    to give you your advice of rights about your right of appeal.

17    I'm not doing that to confuse you, but I'm doing that as a

18    precaution in case for some reason the waiver doesn't apply or

19    it's not effective or it doesn't cover everything, and you'll

03:44PM 20    have to consult with counsel to see whether or not that's true.

21         So if you have not waived it, you can appeal your

22    conviction if you believe that your guilty plea was unlawful or

23    involuntary or if there was some other fundamental defect in

24    the proceeding that has not been waived.  If you've not waived

25    it, you may have the right to appeal your sentence under some

1   circumstances, particularly if you think the sentence was

2   contrary to law.  If you're unable to pay the costs of appeal,

3   you may ask permission to have those costs waived and appeal

4   without pain.  You must file any notice of appeal within 14

5   days after the entry of judgment, and if you request, the clerk

6   will immediately prepare and file a notice of appeal on your

7   behalf.

8           Again, my understanding is that you have waived your

9   right to an appeal, but you'll have to consult with

03:45PM 10  Mr. Reddington to see whether or not there's anything left to

11  appeal.

12          All right.  Before we break, I want to set a date for

13  the forfeiture hearing.  Ms. Sullivan, in the other case, we

14  have a hearing set for the 31st.  Do you expect to be able to

15  resolve it at that point?

16          MS. SULLIVAN:  I have every hope that I'm able to

17  resolve it by that point, your Honor.

18          THE COURT:  Does it make sense to do this at the same

19  time or should I wait some period of time after that?

03:45PM 20          MS. SULLIVAN:  I'd actually defer to Mr. Reddington.

21  I'm not trying to turn it around too quickly for him.  I'm

22  happy to do it either on the same date or a short time

23  thereafter.

24          THE COURT:  Mr. Reddington.

25          MS. SULLIVAN:  The same date.

35

1          THE COURT:  Why don't we do it on the same date.

2     There's nothing special about this date.  That hearing is set

3     for 11:00.  Why don't we make it 11:15.  I don't know if I'm

4     going to have an actual hearing or not.  If we are, if we are

5     going to call witnesses, obviously that's different.  I assume

6     it's going to be a quick legal proceeding?

7          MS. SULLIVAN:  That's my understanding at this point,

8     your Honor.

9          THE COURT:  Just let me know.  So 11:15, Friday,

03:46PM 10     October 31st for a hearing on restitution, and it may be if you

11     come to an agreement, we don't need to have a physical hearing,

12     maybe I can simply enter the order.

13          MS. SULLIVAN:  Great, thank you.

14          THE COURT:  All right.  Again, I would like if the

15     victim wishes not to participate or to submit any medical

16     records or anything of that sort, I may need nonetheless to do

17     something because I think restitution is mandatory, and I would

18     like to know the parties' views on that as well if that's how

19     it plays out.

03:47PM 20          MS. SULLIVAN:  Understood.

21          THE COURT:  All right.  Mr. Gage, I want to say a

22     couple of things, I guess.  First, I note the presence of

23     family and supporters here.  I think I can only imagine what

24     they're going through.  I hope you're thankful for their

25     presence.  A lot of people in your position, the family is so

1    embarrassed by it, they're effectively abandoned.  Their

2    families want nothing to do with them, and I'm sure this is

3    heart-breaking for them, but I want to acknowledge their

4    presence here.

5         I, of course, want to acknowledge the victim and her

6    family and can only imagine what they're going through, and,

7    Mr. Gage, you've gotten a very long sentence which you deserve,

8    but I don't take any particular pleasure in doing it.  I

9    understand that you're a human being and that you have positive

03:48PM 10   qualities, to be sure, and at some point even though it's quite

11   far in the future, I do hope that this is behind you and that

12   you can return to being a productive member of society having

13   served your sentence.

14        All right.  Is there anything further, Ms. Sullivan?

15        MS. SULLIVAN:  No, thank you.

16        THE COURT:  Mr. Reddington?

17        MR. REDDINGTON:  No, your Honor, thank you.

18        THE COURT:  Thank you.  We'll stand in recess.

19        (Whereupon, the hearing was adjourned at 3:49 p.m.)

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3

4     UNITED STATES DISTRICT COURT )

5     DISTRICT OF MASSACHUSETTS ) ss.

6     CITY OF BOSTON )

7

8

9              I do hereby certify that the foregoing transcript,

10    Pages 1 through 37 inclusive, was recorded by me

11    stenographically at the time and place aforesaid in Civil

12    Action No. 13-10305-FDS, UNITED STATES OF AMERICA vs.

13    KEITH GAGE and thereafter by me reduced to typewriting and is a

14    true and accurate record of the proceedings.

15              Dated this 12th day of November, 2014.

16

17                        s/s Valerie A. O'Hara

18              _____

19                   VALERIE A. O'HARA

20                   OFFICIAL COURT REPORTER

21

22

23

24

25